ROGERS, BROWN & CROCKER BROS., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67581.   Promulgated March 29, 1935.

*Adrian C. Humphreys, Esq.*, and *Newton K. Fox, Esq.*, for the petitioner.

*S. B. Anderson, Esq.*, for the respondent.

### OPINION.

ARUNDELL: Respondent determined a deficiency of $7,345.21 in petitioner's 1929 income tax. Petitioner alleges that the determination is erroneous, in that respondent (1) overstated gross profit from trading, and (2) disallowed a deduction of $41,744.63 for salaries incurred within the year.

Petitioner, a Delaware corporation, was organized on June 8, 1925, succeeding to the businesses of two partnerships. At first its principal business was selling pig iron and other metals on a commission basis. In 1929 its commission sales amounted to $3,447,-051.80 and its sales for its own account amounted to $17,254,791.81.

Petitioner keeps its books on an accrual basis.

In its 1929 return petitioner reported gross income from " commissions earned " in the sum of $872,548.01, of which $69,449.76 represented commissions earned on sales of pig iron and other metals,

$139,748.51 represented profits from dealings on the rubber exchange, and $663,348.74 represented gross profit from sales for its own account of pig iron and other metals ($400,457.22), crude rubber ($215,727.58), and export merchandise ($47,164.94). The only one of those items now in dispute is the gross profit of $215,727.58 from sales of crude rubber, and the controversy as to that item arises out of petitioner's challenge of the accuracy of its own return. The return included deductions, among others, of $41,774.63 for " Reserve for additional compensation " and $98,558.95 for 1928 net loss, and showed a net income of $209,488.88. Petitioner sustained a statutory net loss of $73,558.95. in 1928. Respondent disallowed the deduction taken for reserve for additional compensation, reduced the deduction for 1928 net loss to the amount now agreed to be the correct figure, and, accepting the return as otherwise correct, determined a net income of $276,263.51.

The petitioner asserts that the result of its trading in crude rubber was a loss of $176,360.93 and not a gross profit of $215,727.58, as reported in the return. The reported gross profit was computed by deducting from the total of crude rubber sales ($7,788,415.24) the total actual invoice cost ($7,572,687.66) to petitioner of the crude rubber sold. The petitioner contends that cost should be represented not by actual invoice cost, but by a figure that reflects the sum of the opening inventory at cost or market, whichever is lower ($178,668.77), plus total cost of purchases during the year ($9,685,359.38), less closing inventory at cost or market, whichever is lower ($1,899,251.98), or $7,964,776.17. Taking the latter figure as cost, a loss from crude rubber sales in the amount asserted by the petitioner would be reflected. The parties agree that this $7,964,776.17 is the correct cost of goods sold figure if petitioner is entitled to use inventories valued on the basis of cost or market, whichever is lower, in computing net income. The respondent concedes petitioner's right to use inventories for that purpose, but contends that a previous election by petitioner, to value inventories on the basis of cost, is binding upon the petitioner for the taxable year. If that be the case, the result of the year's trading in crude rubber has been correctly reported in the return; for the arithmetical result of a computation of cost, when based upon cost of purchases and inventories valued at cost—there being no evidence of actual loss, through shrinkage, spoilage, or other cause, of otherwise inventoriable crude rubber—would be the same figure as that representing actual invoice cost. Thus the question resolves itself into one of whether petitioner is entitled to value its current inventories of crude rubber on the basis of cost or market, whichever is lower, or is limited to a valuation at cost.

By section 22(c) of the Revenue Act of 1928 taxpayers are required, whenever in the opinion of the Commissioner inventories are

necessary in order clearly to determine the income, " to take inventories upon such basis as the Commissioner * * * may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income." Article 102 of Regulations 74, promulgated under that act, provides in respect of the valuation of inventories, as follows:

Section 22(c) provides two tests to which each inventory must conform:

(1) It must conform as nearly as may be to the best accounting practice in the trade or business, and

(2) It must clearly reflect the income.

It follows, therefore, that inventory rules can not be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business. In order to clearly reflect income, the inventory practice of a taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with these regulations. An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting his income.

The bases of valuation most commonly used by business concerns and which meet the requirements of section 22(c) are (a) cost and (b) cost or market, whichever is lower. * * *

* * * Taxpayers were given an option to adopt the basis of either (a) cost or (b) cost or market, whichever is lower, for their 1920 inventories. The basis adopted for that year is controlling, and a change can now be made only after permission is secured from the Commissioner. Application for permission to change the basis of valuing inventories shall be made at least 30 days prior to the close of the taxable year for which the change is to be effective. * * *

Also, article 101 of Regulations 74 provides that " In order to reflect the net income correctly, inventories at the beginning and end of each year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor." The foregoing provisions of the 1928 Act and Regulations 74 have their counterpart in section 205 of the Revenue Act of 1926 and articles 1611 and 1612 of Regulations 69, which governed the years 1925 (petitioner's first taxable year) to 1927, inclusive. By these statutory and regulatory provisions, it was mandatory upon the petitioner to elect an acceptable basis for valuing the inventory of the year in which purchases and sales became income-producing factors, and such election was thereafter binding upon it unless and until it secured the permission of the respondent to change to another basis.

While the stipulated facts and other evidence are not entirely clear about the matter, we gather from those sources that purchases and sales of crude rubber and other commodities have been income-producing factors in petitioner's business from the beginning of its corporate existence and that inventoriable commodities, though perhaps not in large quantities in the first two years, have been carried

forward from year to year. The petitioner's 1928 return shows an opening (1927 closing) inventory of $568,700.48, so that it is clear that as early as 1927 petitioner was carrying a substantial inventory. What the petitioner's election may have been in the matter of valuing its earliest inventory does not specifically appear. Its claim of right to value its inventories at cost or market, whichever is lower, is based on a statement in the 1928 return that the opening and closing inventories were valued on that basis, which statement, petitioner contends, was an exercise of an election that is binding for the taxable year in question. But the petitioner must have filed returns for 1925, 1926, and 1927, and, as already indicated, it was carrying a substantial inventory as early, at least, as 1927; and it is clear, as will hereinafter more fully appear, that the 1927 closing (1928 opening) inventory was valued at cost. The burden of showing an election to value its inventories at cost or market, whichever is lower, that is binding as to the taxable year in question is upon the petitioner, and that burden is not met by merely proving what was said in the 1928 return about valuing the inventories of that year, especially when the petitioner is known to have carried an inventory in an earlier year and the statement in the 1928 return can be shown to be without factual basis.

In the 1928 return petitioner, in answer to a specific interrogation about the matter, stated that its opening inventory of $568,-700.48 and its closing inventory of $203,290.93 were valued "At cost or market whichever is lower." In the 1929 return petitioner answered that its opening (1928 closing) inventory of $203,290.93 and its closing inventory of $2,526,019.69 were valued at "Cost." Now it is obvious that both of these statements as to the 1928 closing (1929 opening) inventory cannot be correct; for the inventory valuation could not be the same on both bases, unless cost was lower than market at the close of 1928, and that clearly was not the case, because the parties have agreed that the cost of crude rubber (but not of the other commodities) then on hand was higher than its then market value, and that the value of the 1928 closing (1929 opening) inventory at cost or market, whichever is lower, was $189,635.15. That that inventory was actually valued at cost, and not the lower of cost or market, not only in the 1929 return but in the 1928 return as well, is clear from the following computation:

| | |
|---|---|
| Invoice cost of goods in 1929 closing inventory as shown in 1929 return | $2,526,019.69 |
| Add: Invoice cost of goods sold in 1929 | 16,593,442.07 |
| Total | 19,119,461.76 |
| Deduct: Invoice cost of all purchases in 1929 | 18,916,170.83 |
| Invoice cost of goods sold in 1929 opening (1928 closing) inventory as shown in the 1928 and 1929 returns | 203,290.93 |

That the 1928 opening inventory was also valued at cost is deducible from the following: The record shows that the gross profit from commodity sales included in the 1928 return was computed in the same manner as in the 1929 return, that is, on the basis of selling price less actual invoice cost; and since that gross profit is reflected in the year's net loss that exactly fits in in a reconciliation of the year's net change in surplus, the unmistakable inference is that the opening inventory reflected in surplus at the beginning of the year and the closing inventory reflected in surplus at the end of the year are, in both instances, valued at cost.

In view of the foregoing, we hold that the record does not show an election by the petitioner in 1928, or at any previous time, to value its inventories on the basis of cost or market, whichever is lower, but that, notwithstanding the statement in the 1928 return, it has consistently valued its inventories, at least from and including 1927, at cost.

The petitioner argues, however, that the best accounting practice in "the rubber business" is to use inventories valued at cost or market, whichever is lower; and that income is distorted by the use of inventories otherwise valued, because of daily price fluctuations in the rubber market and the narrow margin of profit in dealings in that commodity. The argument is supported, to some extent, by the opinions of petitioner's witnesses. But petitioner's inventories were made up, not only of crude rubber, but of many other commodities—pig iron, mica, shellac, coke, fluorspar, alloys, etc., and so-called "export merchandise." True, crude rubber was the principal single item in and made up the greatest part of the 1929 inventories, but that commodity represented no such an important part of previous inventories. Whatever the best accounting practice as to inventories in "the rubber business" may be, it is no more a criterion of the best accounting practice in a jobbing business dealing in a large group of unrelated commodities than would be the practice in a business dealing exclusively in pig iron, or mica, or fluorspar, or any one of the other commodities which made up petitioner's gross sales. This is not a case where dealings in each separate commodity constituted a separate business, but rather where the business was made up of several departments, each engaged in dealing in a different commodity.

In general, the business may be likened to departmental merchandising. In a business of that character the inventory method must be uniformly applied throughout all departments and to all commodities or merchandise, irrespective of what the best accounting practice may be in a trade or business of dealing in any one of the separate commodities represented in the inventory. Moreover, it is inconceivable that petitioner's income is distorted by the use of inven-

tories valued at cost. Certainly there is nothing in the record, apart from the opinions of petitioner's witnesses, that would justify a conclusion to that effect; and the basic facts upon which the witnesses formed their opinions are not a matter of record. Cost, as a basis of inventory valuation, has been consistently recognized since the first income tax law as generally applicable to all businesses. It may be that, because of the narrow margin of profit, in dealings in crude rubber, the price fluctuations of a day might result in the disposition of some part or all of the crude rubber inventory in the following year at less than inventory value; but that might happen whether inventory value be cost or market. And that possibility is not peculiar to crude rubber alone; it might happen in the case of any of the staple commodities that are dealt in on commodity exchanges on narrow profit margins. Certainly the possibility is no sound reason for holding that the cost method of valuing inventories is not a proper method in this case.

We would not pass unnoticed petitioner's argument on the brief that it is not seeking a change in inventory method, because it " never took physical inventories or used inventories in computing the income shown on the returns filed." The inference is, of course, that, never having taken or used inventories to determine income, the cost method of valuing inventories has not heretofore been adopted or used. But the premise is only a half truth born of sheer expediency.

In the first place, a physical count of goods in the 1928 and 1929 inventories must have been available to the petitioner and the respondent, otherwise they would not have been able to agree upon and stipulate, as they have done, the value of the goods in those inventories, at cost or market, whichever is lower. Secondly, while petitioner has not in the taxable year or previously computed cost of goods sold by the formula of " opening inventory, plus purchase, less closing inventory ", such a procedure was wholly unnecessary; for, as already pointed out, the arithmetical result of that formula, when the inventories are valued at cost, assuming that there have been no inventory losses through shrinkage, spoilage, or other similar causes, is the same figure as the actual invoice cost of the goods sold, which petitioner used for computing gross profit from sales. That there were no inventory losses is evident from the same reasoning and computations by which we determined that the inventories shown in the 1928 and 1929 returns were valued at cost; for had there been such inventory losses, the computations and reasoning would have yielded entirely different results. The parties have stipulated that: " The result of the method employed by the petitioner in computing taxable net income on the income tax return filed for the years 1929 and prior years was to disregard all purchases of goods

in each year which were still on hand at the end of each of such years." We understand this stipulation to mean that petitioner did not use the formula of "opening inventory, plus purchases, less closing inventory." The important thing is, however, not that petitioner did not use that formula for determining cost of goods sold and income, but that as shown by the balance sheets, which are a part of the returns and intended to support and substantiate the reported net income, or net loss, as the case may be, inventories were valued at cost. Again, had those inventories been used in the suggested formula, the resulting cost figure would have been the same as the figure used by the petitioner for computing gross profit from sales. It did then, both in fact and in theory, use inventories valued at cost in computing income.

In view of the foregoing, we hold there is no error in the amount of gross profit from sales of crude rubber reported in the return for the taxable year in question.

The final question for consideration is whether respondent erred in disallowing the deduction of $41,774.63 representing a so-called "Reserve for additional compensation." The facts in respect of this matter have all been stipulated and, being brief, we quote that part of the stipulation below:

As a liability under an officers and employees bonus and profit sharing plan based on a percentage of the annual net earnings of the petitioner, an account was accrued and set up on the books of the petitioner during the year 1929 styled "Reserve for Additional Compensation" in the sum of $57,000. This represented the estimated amount of additional compensation due under the Bonus Plan. During the year 1929 advances had been made and paid out under the Bonus Plan in the sum of $15,225.37, leaving an estimated balance due as of December 31, 1929 of $41,774.63 for the year 1929. When the final computation of the amount due officers and employees under the Bonus Plan was determined for the year 1929, the so-called Reserve for Additional Compensation was found to be underestimated in the sum of $851.18. In addition to the advances made during the year 1929, payment of the additional compensation for the year 1929 was made under the plan in the total sum of $42,625.81—$36,532.82 being paid in January, 1930 and $6,092.22 in February, 1930.

The petitioner now claims not only the $41,774.63 disallowed by the respondent, but an additional $851.18 representing the amount by which its liability for additional compensation was understated in the return, a total of $42,625.81.

There is no dispute as to the reasonableness of the deduction claimed. The respondent disallowed $41,774.63 of the deduction on the ground that the applicable statute does not provide for the deduction of amounts credited to a "reserve for salaries." His position in the matter is further stated on the brief as follows: "In closing the books for 1929 the petitioner could have accrued as a definite ascertained liability the amount of $57,851.18 as of December

31, 1929. Being on the accrual basis it is obvious that the deduction would then be allowable. But the fact is that this was not done." Thus it appears that while respondent concedes that the amount in question was an actual liability at the close of the taxable year, as well he may under the stipulated facts, he has made the disallowance because the petitioner chose to designate its liability a " reserve " rather than by some other name that might have better indicated its true character. But such is not the test of deductibility. True reserves representing mere appropriations of surplus are not proper deductions from income, unless specifically provided for by statute; but when an item is without question within the realm of ordinary and necessary business expenses, it may be deducted, in the case of a taxpayer on an accrual basis, in the year in which incurred, regardless of the style or accounting nomenclature by which it may be called. The statute specifically includes within the category of ordinary and necessary business expenses " a reasonable allowance for salaries or other compensation for personal services actually rendered." That petitioner incurred liability for additional compensation of $42,625.81 during the taxable year not only appears from the stipulated facts, but is conceded; and since petitioner computed net income on an accrual basis, and there is no question as to the reasonableness of the deduction claimed, the whole amount is properly deductible for the taxable year in controversy.

*Decision will be entered under Rule 50.*